**Dated: September 30, 2021**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| ALEXANDER LOUIS BEDNAR, ) | Case No. 19-14021-SAH |
| ) | Chapter 13 |
| Debtor. ) | |

## ORDER

To quote the Bankruptcy Appellate Panel for the Tenth Circuit (the "BAP"), "the present saga" arises out of the third and final chapter 13 bankruptcy case of Alexander Bednar ("Debtor") filed in 2019 (the "Third Bankruptcy Case"). Order [Doc. 122], entered by the BAP on April 27, 2021 (the "Order"). After the Third Bankruptcy Case was dismissed by this Court (Honorable Tom R. Cornish)[1] the chapter 13 trustee, John Hardeman ("Trustee"), was left holding $29,266.15 in plan payments made by Debtor pending confirmation of his chapter 13 plan (the "Funds"). Identifying the Funds as a possible source of recovery, judgment creditors

---

[1] Judge Cornish retired on August 31, 2021. The Bankruptcy Case was then assigned to the undersigned judge.

Rick Warren, Oklahoma County Court Clerk, and Jennifer Byler, Deputy Courtroom Clerk (collectively, "Oklahoma County"), and Jill Bednar ("J Bednar") sought leave to file garnishment summons against the chapter 13 trustee.  The Court denied leave, and Oklahoma County and J Bednar appealed to the BAP.  On April 27, 2021, the BAP reversed and concluded the Funds were not shielded from garnishment by Oklahoma County and J Bednar upon dismissal of the Third Bankruptcy Case under 11 U.S.C. § 1326(a)(2).  The BAP remanded the case for further proceedings consistent with the BAP's Order.  The only question for this Court on remand is consideration and application of the *Barton* doctrine[2] to the requests for leave to file and serve garnishment summonses on Trustee in an effort to reach the Funds.

## FACTS

1. Rather than appearing at a hearing on assets set by Oklahoma County in Oklahoma County District Court (the "Oklahoma County District Court"), Debtor filed his first 2019 bankruptcy case (Case No. 19-12312) on June 6, 2019, and said case was dismissed

---

[2]In Barton v. Barbour, the United States Supreme Court held, "before suit is brought against a receiver leave of the court by which he was appointed must be obtained."  104 U.S. 126, 128, 26 L.Ed. 672 (1881).  The *Barton* doctrine "precludes suit against a bankruptcy trustee for claims based on alleged misconduct in the discharge of a trustee's official duties absent approval from the appointing bankruptcy court."  Satterfield v. Malloy, 700 F.3d 1231, 1234-35 (10th Cir. 2012).

      on July 9, 2019, for failing to obtain credit counseling.[3]  Order, p. 2; Docket in Case No. 19-12312.

2. Debtor filed his second 2019 bankruptcy case (Case No. 19-12845) on July 11, 2019, once again in order to avoid appearing at a hearing on assets set by Oklahoma County in Oklahoma County District Court, which second bankruptcy case was dismissed because Debtor failed to appear for the Section 341 meeting of creditors.  Order, p. 3; Docket in Case No. 19-12845.

3. Oklahoma County again reset the hearing on assets, but Debtor then filed the Third Bankruptcy Case on October 1, 2019.  Order, p. 3; Doc. 1.

4. Oklahoma County filed a proof of claim in the Third Bankruptcy Case, Claim No. 5-1, in the amount of $30,582.50 based on judgments awarded Oklahoma County against Debtor for frivolous and vexatious litigation conduct.  Claim No. 5-1.

5. J Bednar filed a proof of claim in the Third Bankruptcy Case, Claim No. 8-1, in the amount of $141,469.56 for unpaid domestic support obligations under a Decree of Divorce and Dissolution of Marriage.  Claim No. 8-1.

6. After eight months, and notwithstanding numerous failed confirmation attempts by Debtor, the Court denied confirmation and dismissed the Third Bankruptcy Case on

---

[3] It is well established a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases. Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Inv., 2017 WL 650132, at *2 (W.D. Okla. Feb. 16, 2017). Federal courts may take judicial notice of proceedings in other courts if those proceedings have a direct relation to the matters at issue. St. Louis Baptist Temple, 605 F.2d at 1172. Courts are entitled to take judicial notice of a memorandum and orders from other litigation involving the same parties where an earlier court made factual findings regarding issues in the current proceeding. Amphibious Partners, LLC v. Redman, 534 F.3d 1357, 1361-62 (10th Cir. 2008).

June 24, 2020, finding Bednar was ineligible to be a chapter 13 debtor. Order, p. 4; Doc. 81.

7. At the time the Third Bankruptcy Case was dismissed, Trustee was holding the Funds, $29,266.15, comprised of payments Debtor was required to pay Trustee while confirmation was pending. See Trustee's Memorandum Brief with Certificate of Service [Doc. 149], filed on August 30, 2021. Trustee continues to hold the Funds. Doc. 149, p. 1.

8. On June 26, 2020, Oklahoma County filed its Motion for Leave to Authorize Oklahoma County to Garnish Funds Held by Trustee ("Oklahoma County Motion"). Doc. 83.

9. On July 9, 2020, J Bednar filed Jill Bednar's Motion for Leave to Authorize Her to Garnish Funds Held by Trustee And Notice of Opportunity for Hearing ("J Bednar Motion," collectively with the Oklahoma County Motion, "the Motions"). Doc. 88.

10. At the Court's request, Trustee filed the Statement of Chapter 13 Trustee Regarding Motions or Leave to Authorize Garnishment (Documents 83 and 88) [Doc. 94] on July 29, 2020 ("Trustee Opposition").[4] Trustee opposed allowing garnishment of the Funds. Order, p. 5; Trustee Opposition.

11. After reviewing the Motions and Trustee Opposition, and considering the arguments of the parties and applicable legal authorities, the Court denied the Motions based on good cause. See Order Denying Motions for Leave to Garnish Funds [Doc. 99], entered on September 2, 2020 (the "BK Order"). Specifically, the Court found:

---

[4]Debtor also objected to the Oklahoma County Motion and the J Bednar Motion. However, as the BAP ruled against Debtor in a decision which is now final and non-appealable, Debtor's objections are moot.

    A.    The Motions and their corresponding requests for leave to file and serve garnishment summonses on Trustee fall within the parameters of the *Barton* doctrine.

    B.    Given the possible administrative and financial burdens that may be imposed on Trustee due to garnishment proceedings not only in the Third Bankruptcy Case but also in all other chapter 13 cases he administers dismissed prior to confirmation, the *Barton* doctrine bars garnishments on the trustee; and

    C.    The clear language of 11 U.S.C. § 1326(a)(2) requires chapter 13 trustees to return plan payments previously paid by chapter 13 debtors whose cases are dismissed prior to confirmation.

BK Order, pp. 5 and 7.

12. Oklahoma County and J Bednar filed separate notices of appeal of the BK Order on September 15, 2020 [Docs. 103 and 104]. The two separate appeals were companioned for briefing, oral argument, and decision. Order, p. 7.

13. At the request of Oklahoma County and J Bednar, the Court stayed the BK Order pending appeal. See Order Granting Motions for Stay Pending Appeal, entered on October 19, 2020 [Doc. 120], p. 6.

14. On April 27, 2021, the BAP issued the Order reversing and remanding the BK Order as follows:

- "[T]he *Barton* doctrine required [Oklahoma County] and J Bednar obtain approval of the Bankruptcy Court before commencing their garnishment actions. . . . [T]he

5

      Bankruptcy Court abused its discretion by denying *Barton* leave based upon unsupported allegations of potential inconvenience to the Trustee without weighing the other important factors bearing upon such a decision." Order, pp. 15-16.

- When making the *Barton* determination, the Court is required to gather all relevant facts, and then consider the merits of the garnishment claims, and the other factors identified in <u>In re VistaCare Group, LLC</u>, 678 F.3d 218 (3d Cir. 2012) and <u>Kashani v. Fulton</u> (<u>In re Kashani</u>), 190 B.R. 875 (9th Cir. BAP 1995). Order, p. 16.

- If the *Barton* doctrine does not prohibit a proposed garnishment proceeding against a trustee, the "trustee sits in a similar position to any other party holding money for another and subject to garnishment." Order, p. 29.

15. The Order reversed and remanded the BK Order and instructed this Court to conduct further proceedings, and make a determination, on the application of the *Barton* doctrine to the Third Bankruptcy Case and the requests for leave of Oklahoma County and J Bednar to file garnishment actions consistent with the Order. Order, p. 30.

16. On July 29, 2021, the Court entered its Order Directing Briefing [Doc. 145], directing J Bednar, Oklahoma County, and Trustee to file memoranda discussing the application of the *Barton* doctrine to the Motions and the application of <u>VistaCare Group</u>, 678 F.3d 218, and <u>Kashani</u>, 190 B.R. 875, thereto.

17. J Bednar, Oklahoma County, and Trustee filed their memoranda (the "Memoranda") on August 30, 2021. Docs. 148, 149, and 150.

6

18. By its Order Directing Parties to Request Evidentiary Hearing [Doc. 151], entered on September 1, 2021, the Court directed the parties to advise the Court if an evidentiary hearing was desired by September 9, 2021; otherwise, the Court would consider the parties having consented to ruling on the Motions based on the Memoranda. No party expressed a desire for an evidentiary hearing by such deadline. Docket generally.

**JURISDICTION**

On remand, this Court has jurisdiction over the Third Bankruptcy Case and matters relating thereto after dismissal pursuant to 28 U.S.C. § 157(a). Satterfield, 700 F.3d at 1236. The Court has jurisdiction to determine whether leave should be granted under the *Barton* doctrine to allow garnishment of Trustee Funds because such affects the final administration of the bankruptcy estate. In re Jankauskas, 593 B.R. 1, 4 (Bankr. N.D. Ga. 2018). Matters concerning administration of the bankruptcy estate are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), as a motion for leave to file claims against a trustee is a matter which concerns the administration of the estate, and as such, falls within this Court's jurisdiction to finally determine. In re World Mktg. Chicago, LLC, 584 B.R. 737, 740 (Bankr. N.D. Ill. 2018) (citing 28 U.S.C. § 157(b)(1)). Additionally, all parties have consented to this Court's adjudication of the Motions. World Marketing, 584 B.R. at 740 (first citing Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 135 S.Ct. 1932, 1939, 191 L.Ed.2d 911 (2015); and then citing Richer v. Morehead, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough")).

## CONCLUSIONS OF LAW

"If a plaintiff wants to bring suit against a bankruptcy trustee in a forum other than the bankruptcy court, the *Barton* doctrine requires approval of the bankruptcy court in order to proceed in the alternate forum."  World Marketing, 584 B.R. at 743.  The *Barton* doctrine protects bankruptcy trustees from litigation which may adversely affect their ability to fulfill their duties under the Bankruptcy Code.  Order, p. 29.  The *Barton* doctrine serves three primary purposes:

    1.    Maintain the integrity of the bankruptcy court's jurisdiction;

    2.    Control burdensome litigation that may impede the trustee's work as an officer of the court; and

    3.    Allow the bankruptcy court to monitor effectively the trustee's work.

In re Horton, 612 B.R. 400, 404 (Bankr. D. N.M. 2020) (first citing World Marketing, 584 B.R. at 743; and then citing Lankford v. Wagner, 853 F.3d 1119, 1122-23 (10th Cir. 2017) (purposes of the doctrine are preventing trusteeship from becoming an irksome duty; ensuring that competent people are available for appointment; reducing the expenses of bankruptcy; enabling bankruptcy judges to monitor trustee work more effectively; and ensuring that other courts do not intervene in estate administration without permission)).  The *Barton* doctrine does not shield a trustee from a lawsuit but rather only determines where the suit may be brought.  In re Christensen, 598 B.R. 658, 664-65 (Bankr. D. Utah 2019) (citing Phoenician Mediterranean Villa, LLC v. Swope (In re J & S Props., LLC), 545 B.R. 91, 98 (Bankr. W.D. Pa. 2015)).

The BAP has already determined the Funds and Trustee, as the holder of the Funds, are subject to garnishment proceedings.  Thus, on remand the only matter left for this Court is not *if*, but *where*, Oklahoma County and J Bednar can pursue their garnishment claims against

8

Trustee. Weinman v. Cordes & Co. (In re Bearcat Energy, LLC), 2020 WL 1528262 (Bankr. D. Colo. Mar. 13, 2020) (the *Barton* doctrine "does not shield receivers or other court appointed officials from suit, but only directs where a party must file a lawsuit against such an official"); Christensen, 598 B.R. at 665 ("Stated another way, *Barton* 'does not shield trustees from lawsuits. Rather, the doctrine requires the bankruptcy court to determine *where* the suit may be brought, not *whether* the trustee may be sued.'"). This determination is subject to the BAP's express instruction to consider factors beyond the potential inconvenience and burden to Trustee, specifically the factors analyzed in VistaCare Group and Kashani.

I. **VISTACARE GROUP AND KASHANI FACTORS FOR DETERMINING APPLICATION OF THE *BARTON* DOCTRINE.**

VistaCare Group and Kashani both use a two factor test for determining if leave to sue a bankruptcy trustee should be granted under the *Barton* doctrine. First, the party seeking leave to sue a trustee must make a *prima facie* case against the trustee showing its claim is not without foundation. VistaCare Group, 678 F.3d at 232 (citing In re National Molding Co., 230 F.2d 69, 71 (3d Cir. 1956)); Kashani, 190 B.R. at 885 (citing Anderson v. United States, 520 F.2d 1027, 1029 (5th Cir. 1975) (citing National Molding Co., 230 F.2d at 71)). Failure to establish a *prima facie* case necessarily leads to denial of leave to sue. Christensen, 598 B.R. at 667 (citing World Marketing, 584 B.R. at 743).

Second, a court must then consider the potential effect of a judgment against the trustee and the debtor's estate, which requires a balancing of the interests of all parties involved and consideration of whether another tribunal may have expertise regarding the issues in the proposed suit. VistaCare Group, 678 F.3d at 233 (citing Kashani, 190 B.R at 886-87);

9

Christensen, 598 B.R. at 667.  Kashani then identifies several factors to be considered in balancing the interests of all parties involved:

1. Whether the acts or transactions relate to the carrying on of a business connected with the property of the bankruptcy estate as if the proceeding is under 28 U.S.C. § 959(a), then no approval is necessary.

2. If approval of the appointing court is necessary, whether the claims pertain to actions of the trustee while administering the estate – the court can determine if the proceeding is a core proceeding or a proceeding related to a bankruptcy case.

3. Do the claims involve an individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court so that the trustee is entitled to quasi-judicial or derived judicial immunity?

4  Are the movants or proposed plaintiffs seeking to surcharge the trustee (personal judgment against the trustee)?

5. Do the claims involve the trustee's breaching his fiduciary duty either through negligent or willful misconduct?

Kashani, 190 B.R. at 886-87; Christensen, 598 B.R. at 673.  "Answering one or more of these factors in the affirmative can serve as a basis to deny leave to sue."  Christensen, 598 B.R at 673 (citing Strand v. Loveridge, No. 2:07-cv-00576-DAK, 2008 WL 893004, at * 2 (D Utah Mar. 28, 2008)).

II. **APPLICATION OF THE VISTACARE GROUP AND KASHANI FACTORS FAVORS GRANTING OKLAHOMA COUNTY AND J BEDNAR LEAVE TO PURSUE GARNISHMENT PROCEEDINGS AGAINST TRUSTEE IN STATE COURT.**

   A. **Oklahoma County and J Bednar Established *Prima Facie* Garnishment Claims against Trustee.**

A party seeking leave to sue a trustee under the *Barton* doctrine must make a *prima facie* case against the trustee, establishing the foundation for the claim.  VistaCare Group, 678 F.3d at 232.  The claims at issue herein are garnishment claims.  In Oklahoma, a post-judgment

10

garnishment proceeding "allows a judgment creditor to secure payment of a judgment through enforcing a liability owed to the judgment debtor by a third party." Sisk v. Gaines, 144 P.3d 204, 207 (Okla. Ct. App. 2006) (citing Johnson v. Farmers Alliance Mut. Ins. Co., 499 P.2d 1387, 1390 (citing La Bellman v. Gleason & Sanders, Inc., 418 P.2d 949 (Okla. 1966))).  The judgment creditor, as the garnishor, stands in the shoes of the judgment debtor to enforce a liability owed to the latter by a third party, i.e. the garnishee, and can claim no greater rights against the garnishee than the judgment debtor possesses.  Thames v. Evanston Ins. Co., 2015 WL 3398149, at *1 (N.D. Okla. May 26, 2015) (citing Culie v. Arnett, 765 P.2d 1203, 1205 (Okla. 1988)).  The debt subject to garnishment must be owing absolutely at the time the summons is served upon the garnishee.  Culie, 765 P.2d at 1205.

Here, Oklahoma County and J Bednar are creditors of Debtor, both holding judgments against Debtor.  Claim Nos. 5-1 and 8-1.  Debtor is a creditor of Trustee because Debtor has a claim against Trustee for the return of the Funds pursuant to Section 1326(a)(2).  Thus, Oklahoma County and J Bednar have established a *prima facie* claim for garnishment against Trustee, and Trustee does not dispute such.  Doc. 149, at p. 6.

> **B.    Application of the Kashani Factors Favors Granting Oklahoma County and J Bednar Leave to Commence Garnishment Proceedings against Trustee in State Court.**

Next, this Court must determine if it should retain control of the garnishment proceedings, assisted by the Kashani factors, by analyzing the potential effect of a judgment against Trustee on Debtor's estate.  Christensen, 598 B.R. at 667.  As per Kashani:

1. Trustee has never carried on Debtor's business, and the exception to the *Barton* doctrine under 28 U.S.C. § 959(a)[5] does not, therefore, apply. Accordingly, leave to sue is necessary under the *Barton* doctrine.

2. The garnishment claims made by Oklahoma County and J Bednar against Trustee do not implicate any actions of Trustee while administering Debtor's bankruptcy estate. The claims relate solely to the Funds collected by Trustee prior to dismissal of the Third Bankruptcy Case and currently being held by Trustee notwithstanding dismissal of the Third Bankruptcy Case. The claims raised by Oklahoma County and J Bednar do not attack or question Trustee's actions in administering the estate. Rather, the only issue is who should receive the Funds, with Trustee having no dog in that particular fight.

3. While Trustee is holding the Funds pending direction from this Court, whether his continued possession of those funds is proper is not at issue. As previously stated, given the Order, Debtor cannot claim the Funds, and Trustee has no dog in the fight over who gets the Funds. The garnishment proceedings proposed by Oklahoma County and J Bednar are merely a means to obtain payment of their unpaid judgment debts rather than the Funds being returned to Debtor.

4. Both Oklahoma County and J Bednar repeatedly represent they do not seek to impose personal liability on Trustee. Docs. 148, at pp. 6-7 and 150, at pp. 8-9.

---

[5]Section 959(a) provides in pertinent part: "Trustees . . . of any property . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury."

        The Court would be remiss, however, if it did not recognize the possibility of personal liability being imposed on Trustee under Okla. Stat. tit. 12, § 1185.[6] The Court will hold Oklahoma County and J Bednar to their representations they do not seek to impose personal liability on Trustee under Oklahoma law.

5.     The garnishment claims are not based on, and do not allege, a breach of Trustee's fiduciary duty, whether through negligence or willful misconduct.

Thus, the proposed garnishment claims of Oklahoma County and J Bednar against Trustee do not affect the administration of the bankruptcy estate such that this Court should retain jurisdiction over these claims, and the factors suggest granting leave under the *Barton* doctrine is proper.

        However, VistaCare Group and Kashani also require a balancing of the interests of all parties involved and a determination of what court has the expertise in the legal issues involved. Trustee suggests he will be burdened if leave is granted under the *Barton* doctrine for several reasons. First, Trustee claims he will be required to respond to the garnishment summonses, will be forced to be involved in the garnishment proceedings, and will incur additional attorney fees without a source of compensation. However, Trustee concedes, and this Court agrees, the

---

[6]Section 1185 provides: "From the time of the service of the summons upon the garnishee he shall stand liable to the plaintiff to the amount of the property, monies, credits and effects in his possession or under his control, belonging to the defendant or in which he shall be interested, to the extent of his right or interest therein, and of all debts due or to become due to the defendant, except such as may be by law exempt from execution. Any property, monies, credits and effects held by a conveyance or title void as to the creditors of the defendant, shall be embraced in such liability. In case such monies, credits and effects in the possession or under the control of the garnishee shall exceed the amount of the plaintiff's claim, the garnishee shall stand liable to the plaintiff only for the amount of the plaintiff's claim as disclosed by the garnishment affidavit, together with such further amount as shall be equal to all costs and damages, which the plaintiff may recover in the action and garnishment proceedings."

administrative burden of answering garnishment summonses from Oklahoma County and J Bednar is not great.  Doc 149, at p. 8.

Second, Trustee argues the threat of additional litigation arising in other chapter 13 cases dismissed pre-confirmation poses the greatest threat to increase his administrative burden. Courts recognize the administrative burden imposed on chapter 13 trustee's by post-dismissal garnishment claims:

> It may be true that in any *single* case, the administrative burden to the Trustee is *likely* to be small, but that is certainly not guaranteed given the potential for conflicting claims to funds, litigation in the garnishment action, and competing litigation with potentially conflicting results involving the same funds in the bankruptcy case. Moreover, the small burden of one garnishment could quickly swell to a large burden of hundreds of garnishments if creditors are given the green light to file immediately upon the conclusion of every bankruptcy case.

Jankauskas, 593 B.R. at 12.  No doubt these risks raise legitimate concerns.  However, Trustee presented no evidence of the effect or impact of these, or other, potential burdens on his administration of chapter 13 estates in the Western District of Oklahoma.  He claims he would be owed additional compensation for his time and services in responding to garnishment proceedings in both this case and other dismissed cases, without a source for such compensation. Nevertheless, Trustee failed to quantify such burdens with evidence.  Trustee was invited to present evidence to quantify these claimed burdens at an evidentiary hearing but declined to do so.  Given the BAP's characterization of the prior decision denying *Barton* leave as being "based upon unsupported allegations of potential inconvenience to the Trustee," this Court has little choice but to view the claims of administrative burden as being speculative and unsupported by any evidence.  And, as to the Third Bankruptcy Case specifically, Trustee concedes

"answering a garnishment, alone, is not burdensome enough to warrant denying the motions to garnish [Debtor's] funds when balanced against the interest of [Debtor], Oklahoma County, and J Bednar." Doc. 149, p. 8.

The interests involved, particularly those of Oklahoma County and J Bednar, are compelling. Both have judgments against Debtor. Oklahoma County's judgments arise from sanctions judgments issued by Oklahoma courts due to Debtor's frivolous and vexatious litigation conduct. Claim No. 5-1. J Bednar's claim arises from unpaid domestic support obligations. Claim No. 8-1. Both Oklahoma County and J Bednar have long been held at bay from collecting their judgments and claims against Debtor by his repeat bankruptcy filings designed to hinder collection activities – a clear abuse of the bankruptcy process. The Funds represent a possible source of payment for both in what has been a long, unfruitful effort to collect. The nature of Oklahoma County's and J Bednar's claims against Debtor and the delays in collection they have been forced to endure outweighs the compelling, but unsubstantiated, burdens to Trustee arising out of requests for leave to garnish in this case or in future cases and favors granting leave under the *Barton* doctrine.

VistaCare Group further requires a determination of what tribunal has the expertise required given the issues involved. The Oklahoma County District Court, rather than this Court, has the expertise to handle the issues arising in garnishment proceedings, such as priority disputes and conflicting interests in the same funds, based on Oklahoma law independent of the Bankruptcy Code. Moreover, garnishments are matters routinely handled by the State Court.

Taking into account the minimal effect of any garnishment judgment in the proposed state court garnishment proceedings on Trustee and his final administration of Debtor's bankruptcy

15

estate, the compelling interests of Oklahoma County and J Bednar in collecting their judgment claims, and the expertise possessed by the Oklahoma County District Court respecting garnishment proceedings, Oklahoma County and J Bednar should be granted leave under the *Barton* doctrine to file and serve garnishment summonses against Trustee in Oklahoma County District Court.

## **CONCLUSION**

Based on the compelling facts and circumstances presented in this Third Bankruptcy Case, the Motions are granted, and Oklahoma County and J Bednar are granted leave under the *Barton* doctrine to file garnishment actions against Trustee in the Oklahoma County District Court to obtain the Funds. Provided, however, per the express representations of Oklahoma County and J Bednar, Trustee shall not be subject to any personal liability relating to any garnishment proceeding seeking to recover the Funds. Further, this decision should not be viewed as a green light for creditors to seek leave under the *Barton* doctrine to pursue garnishment of funds remaining in Trustee's hands upon pre-confirmation dismissal of a chapter 13 case. The Court's determination is based specifically on the compelling circumstances set forth herein and the absence of evidence of the burdens Trustee will suffer as a result thereof.

IT IS SO ORDERED.     \#  \#  \#